UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

___Hanook Samson___
Write the full name of each plaintiff.

___CV___
(Include case number if one has been assigned)

-against-

___Park Avenue Dialysis Center___
___Annette Hyde___
___Abrey Doe (Last Name Unknown)___
Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?
☐ Yes  ☑ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/24/19

## I. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Hanook | W | Samson
First Name | Middle Initial | Last Name

1945 Vyse Ave Apt. 4G
Street Address

Bronx | NY | 10460
County, City | State | Zip Code

347-607-0318 | SamsonHanook@gmail.com
Telephone Number | Email Address (if available)

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1: Park Avenue Dialysis Center
Name

116 East 124 Street NY New York
Address where defendant may be served

| | | 10033 |
County, City | State | Zip Code

Defendant 2: Annette Hyde
Name

116 East 124 Street New York New York
Address where defendant may be served

| | | 10033 |
County, City | State | Zip Code

Page 2

- [x] **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

    My race is: _Pakistani American_

- [ ] **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

    I was born in the year: _____

- [ ] **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

    My disability or perceived disability is: _____

- [ ] **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

    My disability or perceived disability is: _____

- [ ] **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

- [x] **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

- [x] **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

- [ ] Other (may include other relevant federal, state, city, or county law):

    _____

IV. STATEMENT OF CLAIM

A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☑ terminated my employment
- ☐ did not promote me
- ☐ did not accommodate my disability
- ☐ provided me with terms and conditions of employment different from those of similar employees
- ☑ retaliated against me
- ☑ harassed me or created a hostile work environment
- ☐ other (specify): _____

B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Attached you'll find the facts that support my claims and the Notice of Right to Sue. Thank you and Happy Holidays.

Please View Attach Documents

Thank You

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

Page 5

## V. ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☑ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?   October

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☑ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   ~~Doc~~ 10/26/2022

When did you receive the Notice?   10/27/2022

☐ No

## VI. RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☑ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here):

Please view Last page of Attactment As a result of engaging in protected ~~activity~~ activitie I was Fired. I was discriminated against because of my National origin by my Coworkers at the place of my Employment Please view Attachment.

Last page of the Attachment

Page 6

## VII. PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated: 12/26/2022 | Plaintiff's Signature: Hanook |
| First Name: Hanook | Middle Initial: W | Last Name: Samson |

Street Address: 1945 Vyse Ave Apt 4G Bronx NY 10460

County, City: | State: | Zip Code:
Telephone Number: 347-607-0318
Email Address (if available): Samsonhanook@gmail.com

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Mr. Hanook Samson
1945 Vyse Avenue Apt 4G Bronx
WEST FARMS, NY 10460

From: New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004

EEOC Charge No.
520-2022-07431

EEOC Representative
Michael Woo,
Investigator

Telephone No.
929-506-5348

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

> Less than 180 days have elapsed since the filing date. I certify that the Commission s processing of this charge will not be completed within 180 days from the filing date.
>
> The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA):* You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Timothy Riera
10/26/2022

**Timothy Riera
Acting District Director**

Enclosures(s)

cc:   Jonathan Bardavid
Lichtman Law Firm
PO Box 370
Pound Ridge, NY 10576
Annette Hyde
Park Avenue Dialysis Center
116 East 124 Street
New York, NY 10035

*Hanook Samson*

# Discrimination at Park Avenue Dialysis Center

NARRATIVE

1. COMPLAINANT **HANOOK SAMSON** ("COMPLAINANT") is a 33-year-old Pakistani American male and a resident of Bronx County, New York. COMPLAINANT was employed by RESPONDENT PARK AVENUE DIALYSIS CENTER, as a Dialysis Technician, from on or about October 18, 2021, until on or about October 29, 2021, when he was unlawfully terminated.

2. At all times relevant hereto, RESPONDENT PARK AVENUE DIALYSIS CENTER is a domestic limited liability company that exists under the laws of the State of New York. RESPONDENT PARK AVENUE DIALYSIS CENTER'S principal place of business is located at 116 East 124th Street, New York, NY 10033 and is where the discriminatory conduct took place. RESPONDENT PARK AVENUE DIALYSIS CENTER employs over 20 employees.

3. RESPONDENT ANNETTE HYDE (hereinafter "RESPONDENT HYDE") is an "Administrator" and supervisor at RESPONDENT PARK AVENUE DIALYSIS. RESPONDENT HYDE had supervisory authority over COMPLAINANT including the authority to hire, fire, or affect the terms and conditions of COMPLAINANT'S employment, or to otherwise influence the decision-maker of same. RESPONDENT HYDE is being sued herein in her individual and official capacity.

4. RESPONDENT ABREY DOE (Last Name Unknown) (hereinafter "RESPONDENT ABREY") is a "Nurse Manager" for RESPONDENT PARK AVENUE DIALYSIS. RESPONDENT ABREY is/was a manager and supervisor of the nursing staff and the dialysis technicians and had supervisory authority over COMPLAINANT. RESPONDENT ABREY had the authority to affect the terms and conditions of COMPLAINANT'S employment, or to otherwise influence the decision-maker of same.

RESPONDENT ABREY is being sued herein in her individual and official capacity.

5. RESPONDENTS HYDE and ABREY are collectively referred to as "INDIVIDUAL RESPONDENTS."

6. RESPONDENTS, PARK AVENUE DIALYSIS CENTER, HYDE and ABREY are collectively referred to as "PARK AVENUE DIALYSIS RESPONDENTS."

7. COMPLAINANT began working for PARK AVENUE DIALYSIS CENTER on or about October 18, 2021, as a full-time "Dialysis Technician," earning approximately $16.65 an hour. Upon completing his training period, COMPLAINANT'S salary was expected to increase to $19.00 an hour.

8. COMPLAINANT was qualified for his position as a dialysis technician and held the necessary credentials for the job.

9. On COMPLAINANT'S first day, he met with his trainer, Wayne McFarlane ("Mr. McFarlane"). Mr. McFarlane seemed impressed with COMPLAINANT'S knowledge and abilities and COMPLAINANT enthusiastically explained that he had attended a Dialysis Training School and he had done his research to perform his job to the best of his abilities.

10. COMPLAINANT also expressed some concern to Mr. McFarlane, explaining that, for safety reasons, he had been taught a different method than the way that Mr. McFarlane was

setting up the dialysis machine. Mr. McFarlane expressed that he had been doing it his way for years but "to each his own" and that COMPLAINANT could set up the machine in the manner that he had been taught.

11. As the week progressed, COMPLAINANT continued his training and worked to become part of the team by starting to get to know his coworkers.

12. Almost immediately, however, COMPLAINANT'S co-workers began engaging in an ongoing and continuous pattern of discriminatory conduct against COMPLAINANT.

13. COMPLAINANT'S co-workers, including but not limited to: Mr. Wayne McFarlane, Ms. Tiana Jackson and Mr. Ryan Persaud repeatedly called COMPLAINANT racially derogatory names in the workplace, referring to his Pakistani background.

14. None of these employees are Pakistani-American.

15. On October 26, 2022, COMPLAINANT had a friendly discussion with one of his new coworkers wherein they both talked about their families and their ethnic backgrounds. COMPLAINANT told this coworker that he was Pakistani-American at that time.

16. Later that day, however, another coworker, Tiana Jackson ("Ms. Jackson") approached COMPLAINANT and asked him where he was from.

17. Sensing that this was not a friendly conversation, COMPLAINANT responded that he was from the Bronx. Ms. Jackson then stated, "no, I meant your nationality. Because I heard you were from Pakistan."

18. COMPLAINANT responded that he was Pakistani-American but asked Ms. Jackson why she asked him this question in such a hostile manner and whether there was an issue.

19. Ms. Jackson's response was that "We don't like you people. You Pakistanis bombed the twin towers." Then, Ms. Jackson stated: "F*cking Terrorist" before walking away.

20. COMPLAINANT was shocked, but as he had just started his employment at PARK AVENUE, he did not immediately report this statement.

21. The next week, during his training, Mr. McFarlane instructed COMPLAINANT to go set up the dialysis machines for other technicians and help them in completing their tasks.

22. As COMPLAINANT was assisting the other technicians, he became increasingly concerned that certain safety precautions and procedures were not being properly followed.

The failure to follow such safety precautions and procedures resulted in the patients experiencing pain and/or discomfort during their dialysis treatment. For example, a patient complained to COMPLAINANT that she did not receive her iron medication prior to the treatment. When COMPLAINANT addressed this with the nurse, the nurse stated that it was fine because the treatment was "almost over anyway."

23. COMPLAINANT also became increasingly concerned with the other technicians' lack of regard for certain safety precautions, such as changing their gloves and/or washing their hands in between patients. COMPLAINANT knew from his Dialysis Training School that these patients were high risk and vulnerable and the failure to adhere to these precautions could result in serious illness and/or death to the patient. As such, as COMPLAINANT would observe deviations from the CDC guidelines, he would advise his coworkers and ask them to change their gloves and/or properly clean and sanitize the treatment areas.

24. This upset COMPLAINANT'S trainer, Mr. McFarlane, and his other coworkers.

25. Mr. McFarlane confronted COMPLAINANT and stated to him, "what's your problem f*cking terrorist just do your job" and "why are you telling people what they are or not doing?"

26. On one occasion, COMPLAINANT tried to assist a patient complaining of pain and

cramping during her treatment. When COMPLAINANT learned from another technician that the nurse forgot to give this patient Heparin, a blood thinner, COMPLAINANT went to nurse and advised her that patient was feeling pain.

27. On his way back to the treatment area, another coworker Ryan Persuad ("Mr. Persuad") stated to COMPLAINANT to "Mind your f*cking business f*ucking Pakistani asshole, stop telling everyone what to do."

28. COMPLAINANT tried to explain to Mr. Persaud that he was concerned because their patients were their responsibilities but Mr. Persuad walked away while exclaiming "F*ucking Pakistani."

29. COMPLAINANT also continued to have issues with his coworker Ms. Jackson who continued to use racial and ethnic epithets towards him.

30. For instances, on one occasion, COMPLAINANT asked Ms. Jackson to speak privately regarding her failure to change her gloves before connecting the needles to a patient. In response, Ms. Jackson told COMPLAINANT to "Mind your f*cking business you terrorist," and walked away.

31. On another occasion, COMPLAINANT walked by Ms. Jackson and she looked at him and said "Go back to your country Osama's nephew, f*cking terrorist."

32. COMPLAINANT continued to ignore these comments but was secretly hurt that his new coworkers were treating him this way and subjecting him to such discriminatory conduct.

33. COMPLAINANT, the only Pakistani-American, was singled out and subjected to this abuse specifically because of his national origin.

34. COMPLAINANT did not understand why his coworkers continued to insult him while using racially derogatory epithets and at first, COMPLAINANT endured this abuse.

35. But on or about October 28, 2021, COMPLAINANT finally broke his silence and reported to the nurse manager RESPONDENT ABREY DOE.

36. COMPLAINANT specifically complained of his coworkers, Mr. McFarlane, Ms. Jackson and Mr. Persaud, and of the comments that each had made to him during the course of his employment at RESPONDENT PARK AVENUE DIALYSIS CENTER.

37. RESPONDENT ABREY DOE'S response to COMPLAINANT'S complaints was to

"focus on [his] training" and for COMPLAINANT to not "worry about what the other technicians [were] doing."

38. RESPONDENT ABREY also told the COMPLAINANT to "not pay any attention" to what his coworkers were saying, referencing the racially and ethnically derogatory statements.

39. COMPLAINANT was engaging in protected activity by making a complaint about the discriminatory conduct he was experiencing from his coworkers.

40. Nothing was done, however, in response to COMPLAINANT'S complaints and COMPLAINANT'S complaints were futile.

41. On or about October 29, 2021, COMPLAINANT was performing his duties when a coworker, Ms. Charles, unexpectedly asked him whether the Center Administrator, RESPONDENT HYDE, was aware that he was from Pakistan.

42. COMPLAINANT was surprised by the question and inquired of Ms. Charles as to why she was asking him this question and what was the problem with him being from Pakistan.

43. Ms. Charles stated to him that it was because Pakistan had a "bad reputation for terrorists."

44. Later that evening (10/29/2021), after COMPLAINANT left work for the day, he received a phone call from the Center Administrator RESPONDENT HYDE. RESPONDENT HYDE asked COMPLAINANT if he was free to talk and when COMPLAINANT advised

that he was driving, RESPONDENT HYDE asked COMPLAINANT to call him back.

45. COMPLAINANT called RESPONDENT HYDE back as soon as he arrived home. Almost immediately, RESPONDENT HYDE asked him "Mr. Samson, where are you from? I've been hearing a lot that you are from Pakistan. Is this true"?

46. COMPLAINANT responded that this was true but questioned why he was being asked this question.

47. COMPLAINANT also expressed that he felt he was being discriminated against for being from Pakistan.

48. RESPONDENT HYDE then responded that "Pakistan had a bad reputation" and that they (allegedly) "bombed us so no one likes that."

49. RESPONDENT HYDE then told COMPLAINANT that he was knowledgeable and shouldn't have difficulties finding a new job, effectively firing COMPLAINANT.

50. COMPLAINANT wasshocked and begged RESPONDENT HYDE to not fire him because he thought he had found his career path and did not want to lose this job. COMPLAINANT also begged to RESPONDENT HYDE to not fire him because he was from Pakistan.

51. RESPONDENT HYDE simply stated to him that this was "management's decision."

52. COMPLAINANT was once again engaging in protected activity as he stated to the Administrator that he believed he was being discriminated against due to his national origin.

53. Moreover, as COMPLAINANT had already complained to the Nurse Supervisor, RESPONDENT ABREY, RESPONDENT PARK AVE DIALYSIS CENTER was aware and/or had actual and constructive notice of its national origin-based hostile work environment against COMPLAINANT and his complaints regarding such.

54. Rather than address the COMPLAINANT'S complaints, RESPONDENT PARK AVE DIALYSIS CENTER instead terminated COMPLAINANT, in retaliation for engaging in protected activity.

55. On or about November 1, 2021, COMPLAINANT received a phone call from the Assistant Administrator asking why he did not report to work on his scheduled days on October 30 and November 1, 2021.

56. The Assistant Administrator advised that she was calling on behalf of RESPONDENT ABREY so COMPLAINANT advised that he would contact RESPONDENT ABREY.

57. COMPLAINANT then contacted RESPONDENT ABREY, who asked COMPLAINANT why he did not report to work on his scheduled days. RESPONDENT ABREY stated that COMPLAINANT'S job performance was good and his training was going well but that this absence may result in COMPLAINANT being written up.

58. COMPLAINANT then advised RESPONDENT ABREY that RESPONDENT HYDE had terminated him on October 29, 2021.

59. RESPONDENT ABREY expressed surprise and then stated that she would call RESPONDENT HYDE and then call COMPLAINANT back.

60. RESPONDENT ABREY never called COMPLAINANT back.

61. On or about November 2, 2021, COMPLAINANT reported to the PARK AVE DIALYSIS facility in order to pick up his paycheck. Upon arriving, COMPLAINANT asked to speak to RESPONDENT ABREY.

62. COMPLAINANT met with both RESPONDENT ABREY and the Assistant Administrator to discuss his termination. Both expressed sympathy at his termination but stated that they could not do anything about it because it was ultimately RESPONDENT HYDE'S

decision.

63. COMPLAINANT again expressed that he believed his termination was based on the fact that he was Pakistani and he felt he was being discriminated against.

64. Both RESPONDENT ABREY and the Assistant Administrator then suggested that his only option was to attempt to speak to RESPONDENT HYDE directly.

65. COMPLAINANT then requested to speak to RESPONDENT HYDE. The receptionist advised COMPLAINANT that RESPONDENT HYDE was in a meeting, but the receptionist was to advise COMPLAINANT that RESPONDENT HYDE'S decision was not going to change so there was nothing further for them to discuss.

66. COMPLAINANT'S employment was terminated based on his national origin and due to his Pakistani background.

67. PARK AVENUE CENTER DIALYSIS RESPONDENTS did not conduct an investigation into any of COMPLAINANT'S complaints.

68. COMPLAINANT'S complaints were rational and PARK AVENUE CENTER DIALYSIS RESPONDENTS did not take COMPLAINANT'S complaints seriously.

69. Rather, PARK AVENUE CENTER DIALYSIS RESPONDENTS chose to terminate COMPLAINANT'S employment mere days after making a complaint of national origin discrimination instead of addressing the discrimination taking place in the workplace.

70. Upon information and belief, PARK AVENUE CENTER DIALYSIS did not have an anti-discrimination policy in place and/or did not train, counsel, or make its employees aware of same.

71. If RESPONDENT PARK AVENUE CENTER DIALYSIS did have an anti-discrimination policy in place, such anti-discrimination policies were futile and/or not taken seriously by PARK AVENUE CENTER DIALYSIS RESPONDENTS - to the detriment of COMPLAINANT.

72. PARK AVENUE DIALYSIS CENTER RESPONDENTS allow(ed) an environment to exist that was permeated with discriminatory acts and humiliation for its Pakistani-American employee COMPLAINANT.

73. RESPONDENT ABREY supported, condoned, ratified, and approved of the discrimination, termination, and racially hostile work environment at RESPONDENT PARK AVENUE CENTER DIALYSIS.

74. RESPONDENT HYDE was more concerned with forcing COMPLAINANT out of the door than giving COMPLAINANT'S concerns and complaints about discrimination/retaliation a good faith review.

75. COMPLAINANT was subjected to a hostile work environment that was permeated with discriminatory insult, ridicule, verbal harassment, humiliating conduct, other abusive conduct against COMPLAINANT due to his national origin.

76. RESPONDENT ABREY and RESPONDENT HYDE were acting pursuant to their employments as agents, employees, and representatives of their Principal, RESPONDENT PARK AVENUE DIALYSIS CENTER.

77. RESPONDENT PARK AVENUE DIALYSIS CENTER, their employees, agents, representatives, and/or subordinates had no good faith business justification for their individual and collective actions against COMPLAINANT.

78. RESPONDENTS' hostile work environment against COMPLAINANT was a continuing violation of COMPLAINANT'S rights.

79. As a result, COMPLAINANT was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, suffered: ongoing mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

80. RESPONDENT PARK AVENUE DIALYSIS CENTER conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

81. Punitive damages are warranted against collective and individual RESPONDENTS individually and collectively.